United States District Court
For the District of Columbia

Kathryn Togge), Thomas Togge,
individually and on behalf of all
others similarly situated
3112 Legation St. NW
Washington, DC 20015

V

- Wachovia Mortgage, FSB
4101 Wiseman Blvd
San Antonio, TX 78251
- Wells Fargo + Company
Corporation Trust Center
1209 Orange St
Wilmington, DE 19801

- Wells Fargo Bank
National Association
101 N Phillips Ave
Sioux Falls, SD 57104
- US Bank National Association
800 Nicollet Mall
Minneapolis, MN 55402

Case: 1:19-cv-03407  JURY DEMAND
Assigned To : McFadden, Trevor N.
Assign. Date : 11/12/2019
Description: Pro Se Gen. Civ. (F-DECK)

RECEIVED
NOV 1 2 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KATHRYN TOGGAS, THOMAS TOGGAS individually, and on behalf of all others similarly situated; <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO & COMPANY; WELLS FARGO BANK, N.A.; U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST; <br><br> Defendants. | Civil Action No.: <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

COME NOW, Plaintiffs KATHRYN TOGGAS and THOMAS TOGGAS individually and on behalf of all other persons similarly situated (hereafter referred to as "Plaintiffs") allege causes of actions against Defendants WELLS FARGO & COMPANY; WELLS FARGO BANK, NATIONAL ASSOCIATION; U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST, (hereinafter referred as "Defendants") as follows:

## INTRODUCTION

1.  This action arises from an aggregation of federal violations, violations of the Consumer Protection Procedures Act, violations of Truth-in-Lending Act, violations of the Fair

1

Debt Collection Practices Act and violations of the Homeowners Protection Act due to conduct and practices by American multinational financial services companies, which individually and together warrant declaratory and injunctive relief as well as monetary damages exceed $5,000,000, according to proof under applicable law based on injuries to Plaintiffs' person and property.

## PARTIES

2.    At all times mentioned in this Complaint, Plaintiff KATHRYN TOGGAS resides at 3112 Legation Street, NW, Washington, DC 20015.

3.    At all times mentioned in this Complaint, Plaintiff THOMAS TOGGAS resides at 3112 Legation Street, NW, Washington, DC 20015.

4.    Defendant Wells Fargo & Company is a nationwide, diversified financial services company. Upon information and belief, Wells Fargo & Company is a publicly traded Delaware corporation and its corporate headquarters are located in San Francisco, California. It is the parent company of Wells Fargo Bank, N.A., and is the ultimate parent in the Wells Fargo organizational structure.

5.    Defendant Wells Fargo Bank, National Association is a national banking association chartered in South Dakota with its principal place of business in San Francisco, California. It maintains multiple offices in Washington, D.C. for the purposes of soliciting applications for and making residential mortgage loans and engaging in other business activities.

6.    Defendant U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST, has its principal place of business in Minneapolis, Minnesota and regularly conducts business in Washington, D.C.

7.     The Defendants in this action are, or were at all relevant times, subject to Federal laws governing fair lending, including the FHA, and the regulations promulgated under each of those laws. The FHA prohibits financial institutions from discriminating on the basis of, inter alia, race, color, or national origin in their residential real estate-related lending transactions.

8.     The Defendants in this action are or were businesses that engage in residential real estate-related transactions in Washington, DC within the meaning of the FHA, 42 U.S.C. § 3605.

9.     Defendants acquired residential home loans sold by or through Wells Fargo Financial, Wells Fargo Funding, Inc., Wachovia Mortgage, FSB, Wachovia Bank, N.A., Wachovia Mortgage Co., World Savings Bank, FSB, American Mortgage Network, Inc., and Home Services Lending, LLC. Through these loan acquisition agreements and arrangements, Defendants acquired the liabilities associated with these loans, including, without limitation, liabilities for violations of the FHA, from Wells Fargo Financial, Wells Fargo Funding, Inc., Wachovia Mortgage, FSB, Wachovia Bank, N.A., Wachovia Mortgage Co., World Savings Bank, FSB, American Mortgage Network, Inc., and Home Services Lending, LLC.

10.     Upon information and belief Plaintiffs allege that each of the Defendants was and is an agent of the other Defendants. Each Defendant, in acting or omitting to act as alleged in this Complaint, was acting in the course and scope of its actual or apparent authority pursuant to such agencies, and/or the alleged acts or omissions of each Defendant as agent were subsequently ratified and adopted by each agent as principal. Each Defendant, in acting or omitting to act as alleged in this Complaint, was acting through its agents, and is liable on the basis of the acts and omissions of its agents.

### JURISDICTION AND VENUE

CLASS ACTION COMPLAINT

11.    This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 3613 and 28 U.S.C. § 1331, because the claims alleged herein arise under the laws of the United States. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1348.

12.    Venue is proper in this district under 28 U.S.C. §1391(b) because Defendants conduct business in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District; and pursuant to 28 U.S.C. §1392 because the action involves real property located in this District.

## FACTUAL BACKGROUND

13.    On May 23, 2008, Plaintiff executed an adjustable rate mortgage note ("Note") in the amount of $1,350.000.00 with a deed of trust ("DOT") on real property located at 3112 Legation Street, NW, Washington, DC 20015.

14.    The debt obligation was originated by WACHOVIA MORTGAGE, FSB and was allegedly transferred to U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST.

15.    Wells Fargo Home Mortgage was appointed as a servicer responsible for all ongoing administration of the loan, including receipt and processing of payments, resolution of payment-related issues, and response to any other inquiries you may have regarding the loan. Upon information and belief, Wells Fargo Home Mortgage was merged into Wells Fargo Bank, National Association.

16.    Defendants conducted services in violation of the Consumer Protection Procedures Act, the Truth-in-Lending Act, the Fair Debt Collection Practices Act and the Homeowners Protection Act. Plaintiffs and others similarly situated sustained severe damages due conduct of Defendants.

17.     Fundamental functions of a mortgage servicer include processing and applying borrower payments, communicating accurate payment information to borrowers, managing escrow accounts, and maintaining accurate loan balance information.

18.     Servicers also respond to borrower inquiries, handle loss mitigation requests, and initiate foreclosure proceedings, among other functions.

19.     To perform these tasks, servicers input loans and borrowers information into electronic databases, often referred to as systems of record. Systems of record are essential to a servicer's ability to service loans in accordance with applicable legal requirements. If the information the servicer inputs into the system of record is inaccurate, or the system itself has deficiencies that produce inaccurate information even when the servicer inputs correct information, a servicer can make critical errors that harm borrowers.

20.     Upon information and belief, Defendants have serviced Plaintiffs' loans and collected upon the debt based on inaccurate and incomplete borrower loan information. Defendants have inputted inaccurate and incomplete information, or failed to input accurate or complete information, about Plaintiffs' loans into their system of record. Because of these system deficiencies, Defendants have had to rely upon manual processes and workarounds that have themselves resulted in errors in Plaintiffs' loans information.

21.     Defendants' use of inaccurate and incomplete information to collect mortgage, tax, and insurance payments, communicate with borrowers about loss mitigation issues, proceed with foreclosures, and when selling the servicing rights of Plaintiffs' loans to new servicers has resulted in significant harm to Plaintiffs.

22.     Defendants' use of inaccurate and incomplete information resulting from its boarding of inaccurate and incomplete information into their system or record, Defendants' error-prone manual processes have caused or is likely to have caused Plaintiffs substantial harm,

and resulted in Defendants communicating, orally and in writing, information to Plaintiffs that they knew or had a reason to know was inaccurate.

23.     More generally, Defendants have serviced Plaintiffs' loans and communicated, orally and in writing, with Plaintiffs using inaccurate and incomplete information, including information relating to Plaintiffs' loan terms, amounts received from and owed by Plaintiffs, escrow amounts, insurance amounts, and/or loss mitigation and foreclosure information. Defendants have serviced the loan based on inaccurate and incomplete information, they have, among other things, collected or attempted to collect inaccurate amounts from Plaintiffs, failed to timely pay Plaintiffs' insurance policies and initiated wrongful foreclosure proceedings upon Plaintiffs' loan.

24.     Defendants are required to correctly credit Plaintiffs' payments, including any overpayment or partial payments, consistent with Plaintiffs' mortgage notes and applicable laws, including Regulation Z.

25.     Defendants have routinely failed to send Plaintiffs timely and accurate periodic statements, failed to timely and accurately credit and apply Plaintiffs' payments, and failed to correct billing and payment errors.

26.     Under Regulation Z, a servicer generally must provide a borrower with a periodic statement each month that details, among other things, the amount the borrower must pay that month, how the servicer will break down and apply the borrower's monthly payment, all transaction activity since the last statement, and the amount of payments in a suspense or unapplied funds account. When a servicer receives a full periodic payment for a loan secured by the consumer's principal residence, it must credit the payment as of the date the payment is received unless, among other exceptions, the delay in crediting does not result in a charge to the borrower or negative reporting to a consumer reporting agency.

6

27.     If Defendants receive a partial payment and holds it in a suspense or unapplied funds account, they must, after accumulating funds sufficient to cover a periodic payment, treat such funds as a full periodic payment (e.g., an amount sufficient to cover principal, interest, and escrow, if applicable, for any given billing cycle).

28.     Under Regulation X, a servicer is also required to have policies and procedures reasonably designed to ensure, among other objectives, that the servicer is providing accurate and timely disclosures to a borrower as required by applicable law, such as periodic statements required under Regulation Z.

29.     In addition to the requirements under Regulation Z and Regulation X, a servicer is prohibited from engaging in unfair, deceptive, and abusive acts and practices related to payment crediting and debt collection activities under the CFPA and FDCPA.

30.     Defendants have failed to comply with Regulation Z, Regulation X, the CFPA, and/or the FDCPA.

31.     Defendants' errors in crediting Plaintiffs' payments and use of inaccurate payment information have significantly harmed Plaintiffs. Defendants have charged Plaintiffs improper late fees; reported inaccurate, negative payment information to credit reporting agencies; subjected Plaintiffs to collection calls based on inaccurate information; and wrongly threatened Plaintiffs with foreclosure. This conduct has harmed Plaintiffs financially and caused Plaintiffs frustration and emotional distress.

32.     Upon information and belief, Plaintiffs did not receive all closing documents, including Truth-in-Lending Act ("TILA") disclosures.

33.     Defendants made, funded and securitized unconscionable loans in violation of Section 28-3904(r)(1), which prohibits making or enforcing unconscionable terms or provisions

of a sale or lease with knowledge "that there was no reasonable probability of payment in full of the obligation by the consumer.

34.     Defendants violated the Consumer Protection Procedures Act (CPPA) by promoting, underwriting and ultimately funding Plaintiffs' loans.

35.     Defendants made, funded and securitized loans with unconscionable penalties, with an adjustable rate, with negative amortization and without regard to Plaintiffs' ability to pay loans.

36.     Defendants provided Plaintiffs with the loan documents and the company made misrepresentations in their loan paperwork regarding the mortgage product and the impact on their equity.

37.     Defendants supplied Plaintiffs with loans that had unconscionable terms, knowing it provided them no substantial benefits, knowing they had no reasonable probability of payment in full, and knowing the fees stripped them of equity, thereby taking advantage of their inability to understand the language in the agreement.

38.     The loan documents have a substantial affect on the "disclosures" Defendants are allowed to make under the Home Owners' Loan Act ("HOLA"), as well as the "origination" of their loans, "loan-related fees," and finally the "terms of credit, amortization of loans and deferral and capitalization of interest.

39.     The defendants violated 15 USC §1641(g) by failing to notify Plaintiffs in writing of debts' transfers as it is required by the statute.

## CLASS ACTION ALLEGATIONS

40.    This action is appropriate for determination through the Federal Class Action Procedure (Fed. R. Civ. P. 23, et seq.), and the proposed Class Representative(s) herein seek to represent the following proposed Class:

All persons, companies or other entities which are/were clients of WACHOVIA MORTGAGE, FSB, WELLS FARGO & COMPANY or U.S. BANK NATIONAL ASSOCIATION that suffered one or more of the following: (a) violation of the Consumer Protection Procedures Act, (b) Violation of Truth-in-Lending Act disclosures, (c) Violation of the Fair Debt Collection Practices Act, or (d) Violation of the Homeowners Protection Act.

41.    The proposed Class is so numerous that joinder is impracticable. The disposition of the claims asserted herein through this class action is the most efficient means of handling these claims and the best way to ensure the interest of the Class Members are preserved and will also benefit the Court.

42.    Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a)  whether the Consumer Protection Procedures Act was violated by Defendants' acts as alleged herein;

b)  whether the Truth-in-Lending Act was violated by Defendants' acts as alleged herein;

c)  whether the Fair Debt Collection Practices Act was violated by Defendants' acts as alleged herein;

9

d) whether the Homeowners Protection Act was violated by Defendants' acts as alleged herein.

44.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

45.    This suit may also be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of fact and law common to the Nationwide Class and the District of Columbia Subclass predominate over the questions affecting only individual members of the classes and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual class member may disproportionate to the burden and expense of individual prosecution of complex and extensive litigation to proscribe Defendants' conduct and practices. Additionally, effective redress for each and every class member against Defendants may be limited or even impossible where serial, duplicitous, or concurrent litigation occurs on these disputes. Even if individual class members could afford or justify the prosecution of their separate claims, the court system may not be up to the task. Individualized litigation may lead to incongruous and conflicting judgments against Defendants. To the contrary, a class action procedure involving all class members, Defendants and the court present fewer management difficulties, and provide the benefit of a single adjudication, economy of scale, and judicial efficiency and fairness.

## COUNT I
### Against All Defendants

10

## Civil Action for violation of the Consumer Protection Procedures Act

46.     Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

47.     The CPPA is a remedial statute that is to be broadly construed. It establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.

48.     The CPPA prohibits unfair and deceptive trade practices in connection with the offer, sale, and supply of consumer goods and services.

49.     Defendants' representations to Plaintiffs, both express and implied, regarding unconscionable terms or provisions of a sale or lease with knowledge that there was no reasonable probability of payment in full of the obligation by the Plaintiffs, are misrepresentations concerning material facts that have a tendency to mislead consumers and are unfair and deceptive trade practices that violate the CPPA, D.C. Code§ 28-3904(e).

50.     Defendants' failure to disclose all information and documents required by Truth-in-Lending Act disclosures, is a material fact, the omission of which tended to mislead Plaintiffs and are unfair and deceptive trade practices that violate the CPPA, D.C. Code§ 28-3904(f).

51.     Defendants' failure to explain to Plaintiffs terms and conditions of the loan agreement, especially regarding the payment terms, constitute ambiguities as to material facts that have the tendency to mislead Plaintiffs and are unfair and deceptive trade practices that violate the CPPA, D.C. Code§ 28-3904(f-l).

52.     Defendants provided Plaintiffs with the loan documents and made misrepresentations in their loan paperwork regarding the mortgage product and the impact on their equity.

CLASS ACTION COMPLAINT

53.     Defendants misrepresented material facts about the mortgage product. Specifically, those alleged misrepresentations involved telling Plaintiffs their monthly payments would be fixed and neglecting to tell them that their monthly payments, interest rate and principal balance would increase.

54.     Defendants supplied Plaintiffs with a loan that had unconscionable terms, knowing it provided them no substantial benefits, knowing they had no reasonable probability of payment in full, and knowing the fees stripped them of equity, thereby taking advantage of their inability to understand the language in the agreement.

55.     As a proximate result of this violation, Plaintiffs have sustained severe damages and losses entitling them to compensatory and special damages, in amounts to be determined at trial.

56.     Plaintiffs are entitled to compensatory damages, punitive damages, attorney's fees under applicable law, and such additional relief as the Court deems just.

<u>COUNT II</u>
**Against All Defendants**
**Violation of Truth-in-Lending Act**

57.     Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

58.     TILA and its implementing regulation, Regulation Z, at 12 C.F.R. §1026.36(c)(1), prohibit certain acts and practices and contain certain requirements relating to payment processing in connection "with a consumer credit transaction secured by a consumer's principal dwelling."

59.     "Consumer credit" as defined by Regulation Z, 12 C.F.R. § 1026.2(a)(12) means, "credit offered or extended to a consumer primarily for personal, family, or household purposes."

60. "Credit" as defined by Regulation Z, 12 C.F.R. § 1026.2(a)(14) means "the right to defer payment of debt or to incur debt and defer its payment."

61. A "dwelling" as defined by Regulation Z, 12 C.F.R. § 1026.2(a)(19), means a "residential structure that contains one to four units, whether or not that structure is attached to real property. The term includes an individual condominium unit, cooperative unit, mobile home, and trailer, if it is used as a residence."

62. Defendants are servicers of consumer credit secured by consumers' principal dwellings where it services mortgages that have been extended to consumers primarily for personal, family, or household purposes and secure consumers' principal residential structures that contains one to four units.

63. Under Section 144 of the TILA and Section 226.24(d) of Regulation Z, advertisements promoting closed-end credit in consumer credit transactions are required to make certain disclosures if they state any of several terms, such as the monthly payment. In addition, the rate of the finance charge must be stated as an "annual percentage rate" using that term or the abbreviation "APR." 15 U.S.C. § 1664; 12 C.F.R. § 226.24(c).

64. Defendants' advertisements promoting the loans are subject to the requirements of the TILA and Regulation Z.

65. Defendants' advertisements promoting the loans have failed to disclose or disclose clearly and conspicuously, additional terms required by the TILA and Regulation Z, including one or more of the following:

    a. The amount or percentage of the downpayment.

    b. The terms of repayment, which reflect the repayment obligations over the full term of the loan, including any balloon payment.

c. The "annual percentage rate," using that term, and, if the rate may be increased after consummation, that fact.

66.    Therefore, the practices set forth herein have violated Section 144 of the TILA, 15 U.S.C. § 1664, and Section 226.24(d) of Regulation Z, 12 C.F.R. § 226.24(d), as amended.

67.    As a proximate result of this violation, Plaintiffs have sustained severe damages and losses entitling them to compensatory and special damages, in amounts to be determined at trial.

68.    Plaintiffs are entitled to compensatory damages, punitive damages, attorney's fees under applicable law, and such additional relief as the Court deems just.

## COUNT III
### Against All Defendants
### Violation of the Fair Debt Collection Practices Act

69.    Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

70.    Section 808 of the FDCPA, 15 U.S.C. § 1692f, prohibits debt collectors, such as Defendants, from engaging in unfair or unconscionable means to collect or attempt to collect any debt. As a direct, proximate and foreseeable result, Plaintiffs suffered severe emotional distress and the outrageous conduct was the cause of the emotional distress suffered by Plaintiffs.

71.    Section 807 of the FDCPA, 15 U.S.C. § 1692e, prohibits debt collectors, such as Defendants, from using any false, deceptive, or misleading representation or means in connection with the collection of any debt. Section 807(2) prohibits the false representation of the character, amount, or legal status of the debt. Section 807(10) prohibits debt collectors from using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

72.     Defendants acquire servicing rights to Plaintiffs' mortgage that are in default at the time of transfer and proceeds to collect on this mortgage. With respect to Plaintiffs' debt, Defendants are debt collectors as defined by the FDCPA because they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another and its collection activities are covered by the FDCPA.

73.     In numerous instances, Defendants have represented to Plaintiffs whose loan Defendants acquired the servicing rights to when the loan was in default, directly or indirectly, expressly or by implication, in communications with Plaintiffs, that their loan have certain unpaid balances; monthly payments; delinquency statuses; unpaid fees; reinstatement amounts; escrow amounts due; payoff amounts due; insurance amounts due; and other amounts due.

74.     In truth and fact, in numerous instances the material representations set forth in the above-referenced Paragraph were false or misleading, or were not substantiated at the time the representations were made, including but not limited to representations made where Defendants had knowledge or reason to believe that:

    a.  The prior servicer data and records upon which they were relying were inaccurate or missing but they had failed to obtain or review information substantiating the accuracy of the data prior to collecting or foreclosing on Plaintiffs' loans;

    b.  Its system of record contained inaccurate information due to system errors and limitations, manual entry errors, and incorrect information provided by service providers, but it had failed to obtain or review information substantiating the accuracy of the data prior to collecting or foreclosing on Plaintiffs' loans; and

    c.  Plaintiffs had disputed, challenged, or questioned the validity or accuracy of Defendants' information but they had failed to obtain or review information

substantiating the accuracy of the information, or failed to consider Plaintiffs'

disputes, prior to collecting or foreclosing on Plaintiffs' loans.

75.    The acts and practices described in the above-mentioned paragraphs constitute

violations of Sections 807(2) and (10) of the FDCPA, 15 U.S.C. §§ 1692e(2)(A) and 1692e(10),

and § 1036(a)(1)(A) of the CFPA, 12 U.S.C § 5536(a)(1)(A).

76.    As a proximate result of this violation, Plaintiffs have sustained severe damages

and losses entitling them to compensatory and special damages, in amounts to be determined at

trial.

77.    Plaintiffs are entitled to compensatory damages, punitive damages, attorney's fees

under applicable law, and such additional relief as the Court deems just.

## COUNT IV
### Against All Defendants
### Violation of the Homeowners Protection Act

78.    Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this

Complaint with the same force and effect, as if fully set forth herein again at length.

79.    Under the Homeowners Protection Act (HPA), servicers are required, under

certain conditions, to automatically terminate a mortgagee's requirement to pay private mortgage

insurance on a certain date called the "termination date." 12 U.S.C. §4902(b).

80.    A "servicer" as defined by the HPA, 12 U.S.C. § 4901(16), means a servicer as

defined in RESPA, 12 U.S.C. § 2605(i)(2). Defendants are servicers.

81.    A "mortgagor" as defined by the HPA, 12 U.S.C. § 4901(11), means the "original

borrower under a residential mortgage or his or her successors or assignees."

82.     A "residential mortgage" as defined by the HPA, 12 U.S.C. § 4901(14), means a "mortgage loan, or other evidence of a security interest with respect to a single family dwelling that is the principal residence of the mortgagor."

83.     "Private mortgage insurance" as defined by the HPA, 12 U.S.C. § 4901(10), means "mortgage insurance other than mortgage insurance made available under the National Housing Act, 12 U.S.C. § 1701, title 38, or title V of the Housing Act of 1949, 42 U.S.C. 1471 et seq."

84.     The "termination date" as defined by the HPA, 12 U.S.C. § 4901(18), means the date when:

  a.  With respect to a fixed rate mortgage, the date on which the principal balance of the mortgage, based solely on the initial amortization schedule for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled

  b.  to reach 78 percent of the original value of the property securing the loan; and

  c.  With respect to an adjustable rate mortgage, the date on which the principal balance of the mortgage, based solely on the amortization schedule then in effect for that mortgage, and irrespective of the outstanding balance for that mortgage on that date, is first scheduled to reach 78 percent of the original value of the property securing the loan.

85.     Defendants have failed to automatically terminate private mortgage insurance for Plaintiffs who were current or became current on their mortgage as of their termination date. Defendants failed to act with ordinary care in failing to properly train and supervise their officers with respect to proper procedures in the investigation.

86.    The acts and practices constitute violations of Section 4901(b) of the HPA, 12 U.S.C. § 4901(b), and § 1036(a)(1)(A) of the CFPA, 12 U.S.C § 5536(a)(1)(A).

87.    As a direct, proximate and foreseeable result of Defendants' violations Plaintiffs suffered damages in an amount according to proof at the time of trial.

## COUNT V
### Against All Defendants
### Violation 15 USC §1641(g)

88.    Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

89.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the Class described above.

90.    These defendants are "creditors" under TILA.

91.    The defendants required to notify Plaintiffs in writing of the transfer of the loan from the original lender, such as Wells Fargo & Company to US Bank.

92.    The notification needed to include:

a)  The identity, address, telephone number of the new creditor;

b)  The date of transfer;

c)  How to reach an agent or party having authority to act on behalf of the new creditor;

d)  The location of the place where transfer of ownership of the debt is recorded; and

e)  Any other relevant information regarding the new creditor within 30 days of the transfer.

93.    Defendants failed to notify Plaintiffs and those similarly situated within days of the purported assignment or transfer.

94.    Defendants violated 15 USC §1641(g) by failing to notify Plaintiffs in writing of said transfer within 30 days including;

   a)  The identity, address, telephone number of the new creditor;

   b)  The date of transfer;

   c)  How to reach an agent or party having authority to act on behalf of the new creditor;

   d)  The location of the place where transfer of ownership of the debt is recorded; and

   e)  Any other relevant information regarding the new creditor.

95.    As a result of defendants' violation of 15 USC §1641(g), Plaintiffs' due process rights for notice and opportunity to be heard were violated; they have incurred expenses and are losing and/or lost their home through the process that Plaintiffs would have been able to try to stop if they had the information required by 15 USC §1641(g) in a timely manner.

96.    Plaintiffs are informed and believe and allege thereon that Defendants' conduct was part of a pattern and practice resulting in the same injury to a multitude of similarly situated (former) homeowners.

97.    Plaintiffs have been damaged in an amount to be proven at trial, including but not limited to actual damages resulting from said violation, statutory damages, attorney fees and costs.

## COUNT VI
### Declaratory and Injunctive Relief

98.    Plaintiffs repeat and re-allege all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

99.    Plaintiffs seek Declaratory and Injunctive Relief preventing Defendants from the foreclosure sale until a decision on the merits has been made in this case.

100. An actual controversy exists as to the true amount owed by Plaintiffs to Defendants.

101. Declaratory relief is appropriate pursuant to 28 U.S.C. §2201 and Md. Cts. & Jud. Proc. Art. §3-401 to 3-415.

102. Plaintiffs are entitled to an injunction since Defendants actions are improper and illegal.

103. The public interest is served by preventing Defendants from harming other borrows and continuing to undermine the integrity of the courts.

104. The burden imposed to Defendants requiring them stay the sale is substantially outweighed by the harm suffered by Plaintiffs by allowing Defendant to move forward with the sale.

105. The failure of these Defendants to properly screen and hire the defendant agents and officers as a matter of policy, custom and practice, in the exercise of their functions, was deliberately indifferent to the constitutional rights of Plaintiffs and done with conscious disregard for the dangers of harm and injury to Plaintiffs and others similarly situated.

106. Due to the acts of Defendants, the failure to properly screen and hire agents and officers and the continued employment of the defendant agents and officers present a clear and present danger to the citizens of the United States.

107. The lack of adequate screening and hiring practices by Defendants evince deliberate indifference to the rights of Plaintiffs and others in their position.

108. These hiring practices led to the employment of Defendants caused the harms suffered by Plaintiffs in this case.

109. As a result of Defendants' actions, Plaintiffs suffered physical and psychological injuries.

CLASS ACTION COMPLAINT

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFFS respectfully pray for judgments against all DEFENDANTS, and each of them, as follows:

a. An order certifying Plaintiffs class, appointing named plaintiffs as the representatives of the class and appointing the law firm(s) representing the named plaintiffs as counsel for the class;

b. Permanently enjoin Defendants from committing future violations of the CFPA, FDCPA, RESPA, TILA, and HPA, and enter such other injunctive relief as appropriate;

c. For Injunctive relief to rectify past violations of law and prevent further violations of law; including a temporary restraining order, preliminary and permanent restraining injunction on any attempts of the foreclosure sale;

d. For compensatory general and special damages in an amount in accordance with proof;

e. For reasonable attorney's fees, expenses, and costs of suit.; and

f. Any other and further relief as the Court may deem just, proper and equitable.

Respectfully submitted,

10/29/2019

Plaintiff, Pro Se

KATHRYN TOGGAS

21

10/29/2019

Plaintiff, Pro Se

THOMAS TOGGAS

CLASS ACTION COMPLAINT